UNITED STATES BANKRUPTCY COURT

CENTRAL DISTRICT OF CALIFORNIA

SAN FERNANDO VALLEY DIVISION

FILED & ENTERED

JUL 16 2013

CLERK U.S. BANKRUPTCY COURT
Central District of California
BY Harraway DEPUTY CLERK

In re:

Internet Specialties West, Inc., a California corp

Debtor(s).

Case No.: 1:12-bk-20897-GM

Chapter 11

**MEMORANDUM OF OPINION REGARDING PRIORITY ADMINISTRATIVE EXPENSE OF FEES AND EXPENSES OF STATE COURT RECEIVER DAVID PASTERNAK AND COUNSEL FOR RECEIVER KLEE, TUCHIN, BOGDANOFF & STERN LLP [DOCKET NUMBER 237]**

Date: May 28, 2013
Time: 10:00 a.m.
Courtroom: 303

**Factual Background**

Robert Johnson ("Johnson") and Drew Kaplan ("Kaplan") were equal (50%) shareholders of Internet Specialties West, Inc. ("ISW" or "Debtor"), a California corporation dealing in broadband access and collocation services. Together, Johnson and Kaplan managed ISW's affairs. On March 11, 2011, William Bickley and Kenneth Cleveland ("Bickley" and "Cleveland," and collectively the "Judgment Creditors") obtained a judgment in Los Angeles Superior Court (the "state court") against ISW and Johnson in the sum of $3,826,000.00 as compensatory damages with a 10% annual interest rate; plus $500,000.00 against Johnson as punitive damages; and $500,000.00 against ISW as punitive damages. The Judgment Creditors sought a state court-appointed receiver to aid in the execution of the judgment against ISW, and on June 22, 2011, the state court appointed David Pasternak ("Pasternak" or "Receiver") to this end.

-1-

The Receiver employed various investment bankers to market and sell ISW. Eventually, the Receiver entered into a purchase agreement with Cleveland, one of the Judgment Creditors. The purchase agreement proposed, among other things, a dollar for dollar credit of the judgment amount against the purchase price and to sell ISW for 6 million dollars. Cleveland was unable to obtain funding and the sale was cancelled. On November 30, 2012, Cleveland executed another letter of intent to purchase ISW. This second proposed purchase agreement included the same dollar for dollar credit of the judgment amount against the purchase price term, a funding contingency of 6 to 9 months, and a requirement that the purchase agreement be entered into by January 31, 2013.

Meanwhile, on January 18, 2011, Johnson and his wife Linda Johnson (collectively "Johnson Debtors") filed for Chapter 11 Bankruptcy (the "Johnson Bankruptcy"). Jeffrey Golden ("Golden" or "Johnson Trustee") was appointed as Chapter 11 Trustee on November 15, 2012. On December 4, 2012, Golden filed a petition to employ Mirman, Bubman and Nahmias, LLP ("MBN") as counsel in the Johnson Bankruptcy. Golden evaluated the Johnson estate and found the 50% ownership in ISW to be the most valuable asset of the estate. Upon hearing of the proposed sale of ISW and believing it to be grossly undervalued, Golden, with the support of MBN, contacted the Receiver in an attempt to obtain information supporting the Receiver's valuation of the company. The Receiver failed to provide Golden with the information he sought, leading Golden to hire Glass Ratner ("Glass") to independently evaluate ISW's worth. On December 15, 2012, Glass prepared a preliminary evaluation report (the "Glass Report") that listed the worth of ISW at 12 million dollars.

Based on the Glass Report and the suspected unsatisfactory efforts of the Receiver, Golden and his counsel began discussing with Kaplan the possibility of Chapter 11 Bankruptcy for ISW. In the course of these discussions, Johnson resigned from the board of directors of ISW and Golden was appointed. Golden did not receive compensation for his role as director, but rather accepted the appointment to ensure that a neutral party who owed a fiduciary duty to both the Johnson estate and ISW was in control of the company's future.

On December 18, 2012 Internet Specialties West, Inc. ("Debtor" or "ISW") filed for Chapter 11 Bankruptcy. The Receiver had been in place for some eighteen months and the business was running under his general supervision and through the daily activities of several key employees. Prior management had been removed. On December 28, 2012 the Judgment Creditors file a motion to excuse turnover by the Receiver, which was granted at the hearing on January 14, 2013. It was made clear to the parties that this would be a temporary situation to allow management of the business to stabilize and so that Golden would have an opportunity to become more deeply involved in oversight of the business. The parties were told by the Court that after some rather brief period either the Debtor would be allowed to take control or a Trustee would be appointed. But in the meantime, the Receiver was left in full control of the business and was charged by the Court to negotiate and then comply with a series of cash collateral orders and to allow access (but not control) by the Debtor's shareholders.

The relations at this time between the Debtor's principals, the Judgment Creditors, and the Receiver were acrimonious (at best). To assist him in his control of the Debtor and in negotiating and carrying out the functions necessary to run the

business, on January 23, 2013 Pasternak filed an application to approve Klee, Tuchin, Bogdanoff & Stern LLP ("KTBS") as his counsel. The Court granted this on February 20, 2013. The Employment Order specifically stated that KTBS was not appointed pursuant to 11 U.S.C. §327[1], which is limited to professionals appointed to assist a trustee or debtor-in-possession.

On March 5, 2013 the Court appointed Brian Weiss as Chief Restructuring Officer and the Court concluded that Kaplan and Golden were now in a position to carry out the oversight functions and that it was no longer necessary to have the Receiver in place, thus terminating the turnover extension that had been in existence under §543(d)(1).

On January 10, 2013 the Judgment Creditors removed the state court case to the bankruptcy court,[2] giving this Court jurisdiction to determine the pre-and-post petition fees due to the Receiver, as well as additional authority to review his final accounting under state law. On April 23, 2013 the Receiver filed his final accounting and a motion seeking the approval of payment of $359,833.42 in fees for his work as court-appointed receiver and temporary custodian. He also sought an order that KTBS be paid $56,625.18 from the bankruptcy estate for fees and expenses incurred representing the Receiver in the bankruptcy case. On June 3, 2013, this Court awarded $40,000.00 in compensation to KTBS and requested additional briefing with respect to whether the fee award should be considered an administrative expense of the Debtor's estate. The acceptance of the final report and account and the amount of the Receiver's fees was continued to July 30, 2013. The priority of both the Receiver's fees and those of his counsel have been put in question by the Debtor in its opposition to the

---

[1] All future references will be to 11 U.S.C. unless otherwise noted.
[2] 1:13-ap-01003-GM

final report and fee requests.[3]

**The Briefs**

At the request of the Court, on June 11, 2013, ISW submitted a memorandum of points and authorities asserting that KTBS is not entitled to an administrative claim for fees and expenses incurred in representing the Receiver.  ISW cites to the KTBS Employment Order, which states that KTBS is employed by the receivership estate.  This would prioritize KTBS's legal fees as a general unsecured claim, not an administrative claim of the bankruptcy estate.

The Receiver filed an opposition on June 25, 2013.  His memorandum of points and authorities seeks to establish that the KTBS fee award is in fact entitled to administrative expense priority and that ISW's prior representations to this Court estop ISW from arguing otherwise.

On July 9, 2013, Debtor filed its Reply Memorandum, largely restating the arguments that it had previously made.

**Legal Analysis**

11 U.S.C. §503(b)(3)(E) includes within the purview of administrative expenses "a custodian superseded under section 543 of this title, and compensation for the services of such a custodian."  Section 503(b)(4) goes on to include as an administrative expense the "reasonable compensation for professional services rendered by an attorney or an accountant of an entity whose expense is allowable under subparagraph . . . (E) of paragraph 3…."  Such amounts must be reasonable and

---

[3] 1:12-bk-20897-GM, dkt. 251.

are subject to the Court's approval, but are otherwise given an administrative priority. Section 101(11)(A) defines a custodian to include a court-appointed receiver, here David Pasternak.[4] At issue is whether §503(b)(3)(E) applies to a custodian who was allowed to remain in place during the initial phases of the bankruptcy and whether §503(b)(4) includes the fees incurred by KTBS, which served as Pasternak's counsel after the bankruptcy was filed.

Prepetition fees and expenses of the receiver are allowable as an administrative expense regardless of whether the receiver remains in place after the bankruptcy petition is filed:

> It has long been the policy of the courts to utilize the funds of the estate to pay a superceded custodian. Randolph v. Scruggs, 190 U.S. 533, 23 S. Ct. 710, 47 L. Ed. 1165 (1903). In fact, specific provisions allowing compensation to a superceded receiver provide that extraordinary circumstance where a prepetition expense enjoys administrative status. In re Snergy Properties, Inc. 130 B.R. 700, 704 (Bankr. S.D.N.Y.1991). This is so because the court views the superceded receiver as being entitled to "deduct" the expenses of the receivership from the property surrendered to the bankruptcy court. 3A James William Moore, Collier on Bankruptcy P62.32 at 1617-18 (14th ed. 1975). Presently, the compensation of a custodian superceded by a bankruptcy is provided for under two sections of the Bankruptcy Code, 11 U.S.C. §§ 503(B)(3)(E) and 543(c)(2). Section 503(B)(3)(E) authorizes an allowance for services prior to being superceded, while § 543(c)(2) provides for post-petition services rendered and expenses attendant to turnover and accounting to the bankruptcy trustee.

In re Lake Region Operating Corp., 238 B.R. 99, 101 (Bankr. M.D. Penn, 1999)

As of this time the Court has not determined the amount due to Pasternak for his prepetition services, but when it does, they will be allowed under §503(B)(3)(E). There were no prepetition services provided by KTBS.

The issue as to post-petition services for both Pasternak and KTBS is whether the bankruptcy code specifically allows or denies them an administrative priority.

When a bankruptcy case is filed, section 543(b) comes into play and contemplates that the bankruptcy proceeding will supersede a receivership. It requires that a court-appointed receiver must turn over all assets of the estate to the trustee or

---

[4] All future references to the custodian will thus be references to Pasternak.

-6-

the debtor.  There is no doubt that if the custodian complies with turnover as soon as is practical after the filing of the bankruptcy case, § 543(c)(2) allows pre-and-post-petition fees and costs to be awarded and paid by the estate.[5]  At that point, the receiver is compensated for his services and those of his appointees and although §543(c)(2) sounds as though they will be paid immediately, it is more likely that they will be part of a later distribution of administrative expenses holding the priority given them under §503(b)(3)(E) and §503(b)(4).[6]

However, the Bankruptcy Court has the opportunity to excuse immediate turnover.  This is guided by §543(d): "After notice and hearing, the bankruptcy court. . . may excuse compliance with subsection (a), (b), or (c) of this section if the interests of creditors, and if the debtor is not insolvent, of equity shareholders would be better served by permitting a custodian to continue in possession, custody or control of such property."  Thus, §543(d) not only allows for the excusal of immediate turnover, but also excuses the implementation of §543(c)(2), which requires the court to provide for payment of  reasonable compensation for the costs of a receiver (which will include his counsel).

To the extent that case law exists on this issue, it reaches the result that in general the custodian who remains in place by order of the court is entitled to be paid by the estate for his own fees and for those of his attorney and that these will be an administrative priority.  For example, In re 245 Assocs., 188 B.R. 743, 749 (Bankr. S.D.N.Y. 1995) states that "continuation of the receivership surely implies that the

---

[5] Section 543(c)(2) states that on turnover the court will "provide for the payment of reasonable compensation for services rendered and costs and expenses incurred by such custodian."

[6] The Court did not research the timing of the payment under §543(c)(2) since it is not relevant to the pending motion.  However, under the theory that the receiver is to be paid from assets of the receivership, it is possible that a court might order the receiver to pay himself and his expenses before turnover of the assets in his possession.

receiver can recover his compensation, reimbursement for expenses and payment of his legal fees from the estate." While the court in 245 Assocs. required the receiver to file an application to employ counsel, it also held that once that application would be approved the fees and expenses would be treated as administrative claims. Id., at 746-7.

Other courts have echoed the sentiment that the most appropriate reading of the code is to provide compensation to a receiver and his counsel despite the fact that the receiver was appointed pre-petition and was instructed by the court to continue post-petition. "It cannot be disputed therefore that, if the Receiver had turned the Property over to the Debtor, the Court would be required to provide for the payment of all of the Receiver's unpaid bills, including those of his counsel, subject only to a determination of reasonableness. This Court fails to see as a policy matter why there should be any different treatment of those expenses when the custodian is retained than when he is not." In re 400 Madison Ave. Ltd. Pshp., 213 B.R. 888, 898 (Bankr. S.D.N.Y. 1997).

ISW cites to In re Posadas Associates,127 B.R. 278, 281 (D.N.M. 1991) in support of its position that post-petition fees for the Receiver and KTBS should be treated as unsecured claims rather than administrative ones. In that case, the bankruptcy was filed on March 2, 1990 and the debtor immediately filed a motion to compel turnover from the state-appointed receiver. The bankruptcy judge allowed the receiver to remain in place on an interim basis. On April 9, 1990 the receiver filed a motion to be excused from turnover and to employ counsel. The court excused turnover and allowed post-April 9, 1990 attorney fees as an administrative expense, but did not give administrative expense priority to attorney's fees for work done from March 13, 1990 through April 8, 1990 even though the fees in question were post-petition.

The decision of the court not to allow the post-petition pre-April 9 fees as an administrative expense turned on the court's decision that (1) the custodian is the equivalent of a trustee and may hire professionals only under §327, (2) the fees do not fall under the provisions of §503(b)(3)(E), and (3) the custodian is required to obtain prior court approval in order for those professionals to be compensated from the estate. Since the legal work done prior to the April 9 ruling was for the purpose of keeping the receiver in place, the court held that "where the custodian incurs costs not for complying with the turnover provisions of the Code but for resisting turnover, the Court finds that prior court approval is necessary in order for the fees and costs to be considered for administrative expense priority." Id. at 282. Thus the fees incurred prior to the April 9 motion for employment were not allowed as an administrative expense.

Posadas does not apply on several bases, not the least of which is that I believe that it is erroneous in requiring a §327 application and order to employ counsel. Section 327 is specific to professionals hired by a trustee or debtor in possession[7] and a custodian who is allowed to remain in place does not have the same fiduciary or statutory duties as those imposed on a trustee. As noted in the discussion in Collier, there are good reasons that §327 is the incorrect provision for employment of counsel for a receiver and, therefore, §330 should be used.[8] In this case KTBS was employed under §330, which is the correct section.

Further, regardless of the section under which counsel was employed, unlike Posadas, in the ISW case, the Receiver did not hire his counsel until after the Court had

---

[7] 11 U.S.C. §1107.

[8] Not all courts agree that the custodian is the equivalent of a trustee and some find that it is improper for the custodian to seek to employ professionals under §327. See discussion as to the policy reasons concerning this. Collier on Bankruptcy, 16th Ed. ¶543.05.

ordered him to continue in control of the business.[9] This is a different circumstance from that in <u>Posadas</u>. It is also interesting to note that the <u>Posadas</u> opinion accepts that – in general – the receiver's post-petition fees and expenses are to be treated as administrative claims.

The fact that KTBS was not employed under §327(a) has no effect on the validity of KTBS's employment or the priority of their fees.

<u>Conclusions</u>

ISW cites to §543(d) and its abrogation of §543(c)(2) to support the denial of the fees of the Receiver and of KTBS being accorded an administrative priority. However, the law cannot be read to support this conclusion. Section 543(d) could certainly have been more clearly written if it had stated that upon termination of the order excusing compliance, the custodian shall comply with subsections (b) and (c). And while it is true that §543 does not specifically provide for payment of the Receiver and his professionals at any time other than that of the "automatic turnover" immediately after filing, to rule that a custodian who is allowed to remain in place by order of the Court would have to personally pay for his own professionals, who are employed by order of the Court, is a ridiculous result and an untenable reading of the law.

Further, ISW's reading would also excuse Pasternak from filing his accounting (required under §543(b)(2)), which cannot be the situation envisioned by Congress or this Court.

Ultimately, the policy grounding the allowance of a high priority for administrative expenses is the assumption that such expenses are incurred for the benefit of the

---

[9] The Court excused turnover at the hearing on January 14, 2012. Two days later, on January 16, 2013, KTBS began work and the application to employ was filed on January 23, 2013. It is the practice of this Court that if employment of a professional is granted, the Court will allow fees for work done in the thirty days prior to the filing of the application to be employed.

estate. The Court continued Pasternak's services as receiver precisely to this end. Given his experience with administering ISW, he was, simply put, the best person for the job. Pasternak's services as receiver were certainly beneficial to the estate and allowable under §503(b)(3)(E). This Court likewise ruled in The Employment Order and the multiple hearings leading up to it that Pasternak's request for counsel was reasonable, and in fact necessary.[10] That this Court subsequently modified the amount of those fees to comport with what it saw as reasonable does nothing to undermine the reasonability or necessity of the employment in general, which ISW seems to be again questioning.[11].

Thus, the fact that Pasternak was temporarily excused from turnover at the outset of the bankruptcy, thereby continuing his receivership for some months, has no bearing on the effect of the eventual turnover and the payment of fees for him and his counsel which that turnover requires. The delay in requiring a turnover was merely a tactical move on behalf of the Court so as to ensure the further necessary administration of ISW, a task which Pasternak had been overseeing since June 2011.

For the foregoing reasons, this Court affirms the KTBS's award of $40,000.00 in legal fees and expenses and finds that it is an administrative priority. Once the amount of reasonable pre-and-post-petition fees and expenses of Pasternak have been determined, they will also receive an administrative priority.

###

Date: July 16, 2013

_____
Geraldine Mund
United States Bankruptcy Judge

---

[10] Case 1:12-bk-20897, Dk # 141; Dk#, 313, pg 16
[11] This Court has already ruled on the reasonableness of the KTBS fees, modifying the sought-after $56,124.50 to $40,000.00. Id., Dk #307

-12-

# NOTICE OF ENTERED ORDER AND SERVICE LIST

Notice is given by the court that a judgment or order entitled (*specify*): )_ **MEMORANDUM OF OPINION REGARDING PRIORITY ADMINISTRATIVE EXPENSE OF FEES AND EXPENSES OF STATE COURT RECEIVER DAVID PASTERNAK AND COUNSEL FOR RECEIVER KLEE, TUCHIN, BOGDANOFF & STERN LLP [DOCKET NUMBER 237]** _____
was entered on the date indicated as AEntered@ on the first page of this judgment or order and will be served in the manner stated below:

**1.    SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)** B Pursuant to controlling General Orders and LBRs, the foregoing document was served on the following persons by the court via NEF and hyperlink to the judgment or order. As of (*date*)_____, the following persons are currently on the Electronic Mail Notice List for this bankruptcy case or adversary proceeding to receive NEF transmission at the email addresses stated below.

David Stern; dstern@ktbslaw.com
Thomas Patterson; tpatterson@ktbslaw.com
Jonathan Weiss: jweiss@ktbslaw.com

- Andrew P Altholz    andrewpaltholz@msn.com
- Brian J Bird    bird@khpblaw.com, jmobarez@khpblaw.com
- Jeffrey E Bjork    jbjork@sidley.com
- Leslie A Cohen    leslie@lesliecohenlaw.com, jaime@lesliecohenlaw.com;Brian@lesliecohenlaw.com
- Glen Dresser    gombd@aol.com
- Brian D Fittipaldi    brian.fittipaldi@usdoj.gov
- Barry S Glaser    bglaser@swesq.com
- Andrew A Goodman    agoodman@greenbass.com
- Arthur A Greenberg    agreenberg@greenbass.com, agreenberg@greenbass.com
- Anna Gumport    agumport@sidley.com
- Andy Kong    Kong.Andy@ArentFox.com
- Lewis R Landau    LLandau@HorganRosen.com
- Lewis R Landau    LLandau@HorganRosen.com
- Ashley M McDow    amcdow@bakerlaw.com, jbelton@bakerlaw.com
- Krikor J Meshefejian    kjm@lnbrb.com
- Kerry A Moynihan    kerry.moynihan@bryancave.com, raul.morales@bryancave.com
- Aram Ordubegian    ordubegian.aram@arentfox.com
- Teri T Pham    tpham@enensteinlaw.com, rheyman@enensteinlaw.com
- S Margaux Ross    margaux.ross@usdoj.gov
- Scott C Timpe    stimpe@mbnlawyers.com, scott.timpe@gmail.com;aacosta@mbnlawyers.com
- United States Trustee (SV)    ustpregion16.wh.ecf@usdoj.gov
- Jonathan M Weiss    jweiss@ktbslaw.com
- Jonathan M Weiss    jweiss@ktbslaw.com
- Beth Ann R Young    bry@lnbyb.com

☐    Service information continued on attached

page

**2. SERVED BY THE COURT VIA UNITED STATES MAIL:** A copy of this notice and a true copy of this judgment or order was sent by United States mail, first class, postage prepaid, to the following persons and/or entities at the addresses indicated below:

David Pasternak
1875 Century Park East Suite 2200
Los Angeles, CA 90067-2523

☐ Service information continued on attached page

**3. TO BE SERVED BY THE LODGING PARTY**: Within 72 hours after receipt of a copy of this judgment or order which bears an AEntered@ stamp, the party lodging the judgment or order will serve a complete copy bearing an AEntered@ stamp by United States mail, overnight mail, facsimile transmission or email and file a proof of service of the entered order on the following persons and/or entities at the addresses, facsimile transmission numbers, and/or email addresses stated below:

☐ Service information continued on attached page